UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEMAL R. BELL JR.,

              Plaintiff,

-against-

JUDGE CRAIG BROWN, et al.,

              Defendants.

1:24-CV-7804 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Jemal R. Bell Jr., who is appearing *pro se* and currently resides in a homeless shelter in Brooklyn, New York, brings this action asserting that the defendants have violated his federal constitutional rights.[1] In his amended complaint, Plaintiff names the following individuals as defendants: (1) Judge Craig Brown, a Judge of the County Court, Orange County, and an Acting Justice of the New York Supreme Court, Orange County; (2) Justice Leslie Kahn, a Justice of the Town of Clarkstown Justice Court; (3) Mitchell Maier, Esq., Plaintiff's former attorney; (4) Melissa Robustello, Esq., Plaintiff's current attorney; (5) Michael Davis, Esq., Plaintiff's current attorney; (6) Martena Clark, an Orange County Probation Officer who was formerly assigned to Plaintiff; and (7) Orange County Supervisory Probation Officer Elison, who appears to be Clark's supervisor. Plaintiff seeks damages, as well as injunctive relief, including Officer Clark's and Officer Elison's terminations, the disbarment of all of the abovementioned attorney defendants, and the sanctioning of the judge defendants. The Court construes Plaintiff's amended complaint as asserting claims of federal constitutional violations under 42 U.S.C.

---

[1] Plaintiff commenced this action by filing his original complaint and application for leave to proceed *in forma pauperis* in the United States District Court for the Eastern District of New York. That court then transferred this action to this court. (ECF 3.) Plaintiff thereafter filed an amended complaint in this court (ECF 7), which is the operative pleading for this action.

§ 1983. The Court also construes Plaintiff's amended complaint as asserting claims under state law.

By order dated October 17, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[2] For the reasons discussed below, the Court dismisses this action.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

---

[2] In his IFP application, Plaintiff reveals the full name of his minor child. Under Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, a court submission must not reveal the full name of a minor child; it may only refer to the minor child's name by using the child's name's initials. Fed. R. Civ. P. 5.2(a)(3). In an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to Plaintiff's IFP application to a "case participant-only" basis.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges that the events that are the bases for his claims occurred in courtrooms in the Town of Clarkstown Justice Court and in the County Court, Orange County. He asserts that the defendants have conspired to violate his right to due process with respect to what appears to be a criminal proceeding that has taken place in the Town of Clarkstown Justice Court, before Justice Kahn, but also mainly with respect to a pending probation-violation proceeding that is taking place in the County Court, Orange County, before Judge Brown.[3] Plaintiff objects to Judge Brown's delay of hearings and his scheduling of multiple hearings such that it has become difficult for Plaintiff to travel from his shelter in Brooklyn to appear at those hearings in Orange County. (*See* ECF 7, at 18-19.) He also asserts that Judge Brown is "violating the rules of Part

---

[3] It seems that Plaintiff was arrested and prosecuted within the Town of Clarkstown, Rockland County, New York, while he was serving a term of probation previously imposed on him by the County Court, Orange County. It further seems that Plaintiff's abovementioned arrest and prosecution in the Town of Clarkstown Justice Court are the bases for the probation-violation proceeding that is pending before Judge Brown in the County Court, Orange County.

3

349 of the Interstate and Intra[s]tate transfer of probation and supervision for Adults and Juveniles by refusing to retrieve the receiving probation[] department[] court updates." (*Id.* at 18) "Instead of properly retrieving the probation court updates from the receiving department, . . . [Plaintiff has been] accuse[d] . . . of violating [his] term and conditions [of probation] because . . . [Officer] Clark [(Plaintiff's former Orange County probation officer)] is unable to get a substance treatment report from [Plaintiff's] current provider." (*Id.*) In addition, he asserts that "Judge Brown has also lied about false charges and prior substance abuse history to have the courtroom set up for his predetermined outcome in [Plaintiff's] . . . probation case." (*Id.*)

Plaintiff states that, on November 6, 2024, he was supposed to appear at the Town of Clarkstown Justice Court, and it seems that he did appear for a proceeding there on that date, but that "Judge Kahn acted as if [he] was not suppose[d] to appear, to avoid addressing . . . [Plaintiff's] motion to dismiss due to a violation of [his] right[] to a speedy trial . . . and a motion to supplement the record. . . ." (*Id.* at 5.)

Plaintiff alleges that Officer Clark, his former Orange County probation officer, "deliberately took as much time as she felt like to begin the process of the [probation] transfer even after [Plaintiff] was no longer living in . . . [the Orange County Department of Probation's] . . . jurisdiction." (*Id.* at 18.) He further alleges that Officer Clark "continues the violation of [his] rights and due process as she avoids retrieving the court reports from the receiving probation department as she pulls her string in Judge Brown's unethical orchestra." (*Id.*) Plaintiff states that Officer Elison, Officer Clark's supervisor, "has allowed [Officer Clark] to move in such a way as if laws and due process is nonexistent in Orange County's little unethical world." (*Id.*)

Plaintiff alleges that Mr. Maier, his former attorney, represented him in both the Town of Clarkstown Justice Court and in the County Court, Orange County. He states that Mr. Maier,

4

while appearing in the County Court, Orange County, "made zero attempts to advocate for [him] in any way[,] shape[,] or form[,] even though the opportunity presented itself several times." (*Id.*) Plaintiff states that when he raised with Mr. Maier the issue of Judge Brown's requirement that Plaintiff travel from Brooklyn to appear in the County Court, Orange County, on multiple occasions, Mr. Maier did not raise Plaintiff's difficulty in complying with that requirement with Judge Brown, and told Plaintiff that "he didn't want to affect his relationship with Judge Brown." (*Id.*) Plaintiff states that he also raised with Mr. Maier the fact that he had been living in Brooklyn since March 25, 2024, and traveling to Orange County had negatively affected his employment prospects, but that Mr. Maier did not raise that additional issue with Judge Brown either. He also states that Mr. Maier refused to communicate with the Orange County Probation Department or present to Judge Brown any of the positive accomplishments that Plaintiff had achieved while on probation. Plaintiff further alleges that Mr. Maier failed to object when Judge Brown erroneously stated during a hearing that Plaintiff had been charged with identity fraud and also failed to object when Judge Brown mentioned incorrect information about Plaintiff's substance-abuse history. In addition, Plaintiff states that Mr. Maier refused to provide him with copies of the transcripts of the hearings before Judge Brown. He alleges that, when Mr. Maier appeared before Justice Kahn when representing Plaintiff in the Town of Clarkstown Justice Court, Mr. Maier waived Plaintiff's right to a speedy trial "against [Plaintiff's] personal opinion." (*Id.* at 19.) Plaintiff states that he terminated Mr. Maier's representation with respect to the Town of Clarkstown Justice Court matter, but when he tried to do so with respect to his matter before the County Court, Orange County, Judge Brown initially refused to allow the termination before granting Plaintiff's motion to end Mr. Maier's representation of Plaintiff in

5

that court. Judge Brown then ordered Plaintiff to again appear before him, in the County Court, Orange County, the next day.

Plaintiff states that Judge Brown then appointed Mr. Davis, an Orange County Legal Aid Society attorney, to represent him in his matter before the County Court, Orange County. Plaintiff alleges that, while Mr. Davis was able to get his probation-violation proceeding before Judge Brown postponed, Mr. Davis did not present to that court any of the documentation that Plaintiff had provided to Mr. Davis, nor did Mr. Davis ask Judge Brown to "tak[e] a moment to reconsider his offer.[4]" (*Id.*) When Plaintiff informed Mr. Davis, at another hearing before Judge Brown, that there was "no updated probation reports since May[,] [Mr. Davis] told [Plaintiff that] none of that matters, [and asked Plaintiff whether he was] . . . ready to admit guilt[.]" (*Id.*) Plaintiff states that he then himself filed a motion to present evidence to the court, which both Mr. Davis and Judge Brown have ignored. Plaintiff also states that "[a]ll . . . [Officer] Clark has to do is retrieve the update[d] probation court report from the receiving department but . . . [Mr.] Davis never mentions this in court and now co-conspires with Judge Brown and the [Orange County] probation department to put [Plaintiff] in prison." (*Id.*).

Plaintiff alleges that Ms. Robustello, another Orange County Legal Aid Society attorney that represents him in the criminal matter, "and her team . . . claim to not realize that . . . [Mr.] Maier left a non expiring waiver to [Plaintiff's] right[]to a speedy trial in place, yet that was one of the main reasons [Mr. Maier] was . . . removed from" representing Plaintiff in his criminal matter in the Town of Clarkstown Justice Court. (*Id.* at 6.) He also states that Ms. Robustello informed him, in April 2024, that the Rockland County District Attorney "had six months to

---

[4] This reference to an "offer" may be to an alleged promise by Mr. Davis to Plaintiff that Mr. Davis would attempt to "postpone the . . . [probation-violation] proceeding and present . . . new information to . . . Judge [Brown] and attempt to get a renegotiated deal." (ECF 7, at 19.)

6

indict," yet Ms. Robustello "and her team claim to not have noticed the [speedy-trial] waiver until [August 2024]"; during every hearing before the Town of Clarkstown Justice Court, "Judge Kahn only asked" whether the Rockland County District Attorney was ready to present a case and whether there was a speedy-trial waiver "in place and the answer was always no." (*Id.*)

## DISCUSSION

### A.    Claims under 42 U.S.C. § 1983 against Justice Kahn and Judge Clark

The Court must dismiss, under the doctrine of judicial immunity, Plaintiff's claims under 42 U.S.C. § 1983 for damages and injunctive relief against Justice Kahn and Judge Brown arising from their acts or rulings in the course of their presiding over Plaintiff's criminal matter in the Town of Clarkstown Justice Court (Justice Kahn) and his probation-violation matter in the County Court, Orange County (Judge Brown). Under this doctrine, judges are absolutely immune from suit for damages in their individual capacities for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 9-12 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken in absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). "[T]he scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). In addition, Section 1983, as amended in 1996, provides that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity,

7

injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

To the extent that Plaintiff asserts claims under Section 1983 for damages and injunctive relief against Justice Kahn and Judge Brown, arising from any of their acts or rulings in the course of their presiding over Plaintiff's criminal matter in the Town of Clarkstown Justice Court (Justice Kahn) or in his probation-violation matter in the County Court, Orange County (Judge Brown), Plaintiff has failed to allege any facts showing that either of these defendants acted beyond the scope of their judicial responsibilities or outside of their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Inasmuch as Plaintiff sues Justice Kahn and Judge Brown for "acts arising out of, or related to, individual cases before" them, *Bliven*, 579 F.3d at 210, the doctrine of judicial immunity applies to Plaintiff's claims under Sections 1983 for damages and injunctive relief. The Court therefore dismisses these claims under the doctrine of judicial immunity[5] because Plaintiff seeks monetary relief from defendants who are immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, these claims are frivolous, *see* § 1915(e)(2)(B)(i); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").[6]

---

[5] The amendment to Section 1983, allowing for injunctive relief against a judicial officer only if a state court declaratory decree was violated or state court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive relief against these defendants. This is so because Plaintiff can seek review of these defendants' actions and/or rulings in the New York State appellate courts. *See Berlin v. Meijia*, No. 15-CV-5308 (JMA), 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. May 18, 2018).

[6] While Plaintiff does not name the Town of Clarkstown Justice Court as a defendant in his amended complaint, he seeks damages from it. (ECF 7, at 6.) In addition, while Plaintiff does not name the County Court or Orange County as a defendant in his amended complaint, and though he states in it that he also seeks damages from Orange County, it would appear that he actually seeks damages from the County Court, Orange County, as opposed to the County of

## B.    Claims under Section 1983 against Officer Clark

Plaintiff's claims under Section 1983 against Officer Clark, his former Orange County probation officer, appear to arise from Officer Clark's alleged delay in effectuating the transfer of supervision of Plaintiff's probation from the Orange County Department of Probation to what seems to be the New York City Department of Probation ("NYCDOP"), and from Officer Clark's failure or avoidance with respect to "retrieving the . . . reports from the receiving probation department," the NYCDOP, which currently appears to supervise Plaintiff's probation. (ECF 7, at 18.) Plaintiff asserts that, "[i]nstead of [Officer Clark] properly retrieving the probation court updates from the receiving department by protocol, [Plaintiff is] accuse[d] . . . of violating [his] terms and conditions [of probation] because . . . [Officer] Clark is unable to get a substance treatment report from [Plaintiff's] current treatment provider." (*Id.*) He also asserts that "[t]he report [Officer Clark] needs is with the court report she refuses to get from the current probation officer at the receiving probation department." (*Id.*) To the extent that Plaintiff asserts

---

Orange. (*See id.*) Because both the Town of Clarkstown Justice Court and the County Court, Orange County, are arms of the State of New York, they are immune from suit for damages under Section 1983, pursuant to the doctrine of Eleventh Amendment immunity. *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009); *see Caruso v. Zugibe*, 646 F. App'x 101, 104 (2d Cir. 2016) (summary order); *Hardy-Graham v. Southampton Justice Court*, No. 20-CV-0981 (JS) (SIL), 2021 WL 260102, at *4 (E.D.N.Y. Jan. 25, 2021). The Court therefore dismisses any claims under Section 1983 for damages that Plaintiff asserts against these courts, pursuant to the doctrine of Eleventh Amendment immunity, because they seek monetary relief from defendants that are immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and for lack for subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997); *Atl. Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993). The Court alternatively dismisses any Section 1983 claims that Plaintiff asserts against these courts, for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), because neither court is a "person" for the purposes of Section 1983 liability, *see Clapp v. Vail*, No. 7:24-CV-0324 (PMH), 2024 WL 3471153, at *2 (S.D.N.Y. July 17, 2024) (County Court); *Ceparano v. Southampton Justice Court*, No. 09-CV-0423 (SJF) (AKT), 2010 WL 11527157, at *6 (E.D.N.Y. Mar. 22, 2010) (Justice Court), *report & recommendation adopted*, 2010 WL 1152758 (E.D.N.Y. May 12, 2010), *aff'd*, 404 F. App'x 537 (2d Cir. 2011) (summary order).

9

claims under Section 1983 for damages and injunctive relief against Officer Clark, the Court must dismiss those claims under the doctrine of judicial immunity discussed above.

Courts have extended the immunity from suit for damages that is usually extended to judges to "others who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), when they are performing discretionary acts of a judicial nature that are essential to the judicial process, *see Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997); *Oliver v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988).

In this context, "probation officers are entitled to absolute immunity from suit in connection with their 'preparing and furnishing presentence reports to the court.' They are also entitled to absolute immunity in 'initiating [probation] revocation proceedings and in presenting the case for revocation to hearing officers.'" *Dettelis v. Sharbaugh*, 919 F.3d 161, 164 (2d Cir. 2019) (citations omitted). Courts have extended this absolute immunity from suit to probation officers with respect to claims arising from those officers' actions in providing information to a state court "for the benefit of the judge making the revocation decision." *Randolph v. Chance*, No. 3:24-CV-1631 (OAW), 2025 WL 2159108, at *4 (D. Conn. July 30, 2025); *see also Baker v. Spinner*, 826 F. App'x 105, 107 (2d Cir. 2020) (summary order) (holding that a probation officer's "respon[se] to [a] Judge['s] . . . request for input at [a state court probation-revocation proceeding] conference . . . [is] akin to performing a judicial duty, entitling . . . [that probation officer] to absolute immunity."). In addition, more generally, judges and others who assist them in the judicial context have been held to be immune from suit under the doctrine of judicial immunity with respect to claims arising from their failure to act or their delays in judicial proceedings. *See Gonzalez v. N.Y.C. Dep't of Corrs.*, No. 1:24-CV-3859 (LTS), 2024 WL 4791589, at *2 (S.D.N.Y. Nov. 14, 2024) (judges); *Welch v. Fitzgerald*, No. 5:18-CV-0461

10

(MAD) (ATB), 2018 WL 6173796, at *7 (N.D.N.Y. May 16, 2018) (Family Court clerks), *report & recommendation adopted*, 2018 WL 4795759 (N.D.N.Y. Oct. 4, 2018); *Paige v. City of New York*, No. 10-CV-5469 (SLT) (RER), 2011 WL 65667, at *5 (E.D.N.Y. Jan. 7, 2011) (judges, when accused of conspiring with others to delay criminal cases); *Crist v. United States Dep't of Labor*, 578 F. Supp. 405, 407 n.1 (S.D.N.Y. 1984) (administrative law judge); *see also Hill v. Manning*, No. 1:21-CV-4549 (SDG), 2024 WL 4347870, at *4 (N.D. Ga. Sept. 20, 2024) ("Mere judicial delay, as alleged here, does not reach the high bar of acting in the absence of all jurisdiction; at most, judicial delay is an act in excess of jurisdiction."), *appeal dismissed*, No. 24-13698, 2025 WL 18712 (11th Cir. Jan. 2, 2025); *Dizzley v. Chiles*, No. 8:20-CV-3613 (SAL) (JDA), 2020 WL 11133751, at *3 (D.S.C. Oct. 30, 2020) ("Here, the alleged wrongful act, or failure to act, was part of Defendant's quasi-judicial function as the . . . Clerk of Court. Thus, Defendant has absolute quasi-judicial immunity from this lawsuit."), *report & recommendation adopted*, 2021 WL 3879071 (D.S.C. Aug. 30, 2021), *appeal dismissed*, No. 22-6207, 2022 WL 3594908 (4th Cir. May 4, 2022); *Ramsey v. City of Cleveland*, No. 1:15-CV-2405, 2017 WL 2671060, at *4 (N.D. Ohio June 21, 2017) (holding the difference between probation officers' "failure to act and a mistake made while carrying out a quasi-judicial function. . . . immaterial" for the purpose of holding them immune from suit); *Winters v. Jordan*, 2:09-CV-0522 (JAM) (KJN), 2010 WL 2838633, at *10 (E.D. Cal. July 20, 2010) (judge's alleged refusal to file objections to an order, which allegedly caused delay in judicial proceedings, was in the judge's judicial capacity and the judge was entitled to judicial immunity for those alleged actions), *report & recommendation adopted*, 2010 WL 3636226 (E.D. Cal. Sept. 14, 2010), *aff'd*, 479 F. App'x 742 (9th Cir. 2012) (unpublished opinion).

Courts have also extended the judicial immunity from injunctive relief that is discussed in the amendment to Section 1983 to "judicial employees entitled to judicial and quasi-judicial immunity." *Triestman v. McGinty*, 804 F. App'x 98, 100 (2d Cir. 2020) (summary order); *see also Irazu v. Sainz De Aja*, No. 23-702-cv, 2023 WL 8447256, at *2 (2d Cir. Dec. 6, 2023) (summary order); *Viverette v. Winograd*, No. 1:25-CV-7168 (LTS), 2025 WL 2577665, at *5 (S.D.N.Y. Sept. 5, 2025); *Starke v. Fuentes*, 7:25-CV-3108 (PMH), 2025 WL 2299258, at *4 (S.D.N.Y. Aug. 7, 2025); *Bey v. Ferdinand*, 1:24-CV-6684 (LLS), 2025 WL 1505041, at *5 (S.D.N.Y. May 21, 2025); *Davis v. Thompson*, No. 23-CV-0705 (RPK) (SJB), 2024 WL 1018495, at *4 (E.D.N.Y. Mar. 8, 2024); *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 484 (E.D.N.Y. 2015), *aff'd*, 639 F. App'x 38 (2d Cir. 2016) (summary order). This includes probation officers. *See Murphy v. Rockland Cnty.*, No. 1:25-CV-1950 (LLS), 2025 WL 2689039, at *6-7 (S.D.N.Y. Sept. 18, 2025).

Plaintiff seems to allege that supervision of his probation has ultimately been transferred to what appears to be the NYCDOP. Thus, any claims arising from Officer Clark's lack of speed in effectuating that transfer appear to be moot. In addition, all of Officer Clark's abovementioned remaining alleged actions and failures to act appear to be in the context of providing information to Judge Brown, in the pending probation-violation matter, as to Plaintiff's current probation status in anticipation of a forthcoming decision by Judge Brown as to whether Plaintiff's Orange County-imposed probation should be revoked. Thus, Officer Clark's alleged actions and failures to act seem to fall within her judicial-assistance duties. Accordingly, the Court dismisses Plaintiff's claims, under Section 1983, for damages and injunctive relief, against Officer Clark[7]

---

[7] To the extent that Plaintiff seeks the termination of Clark's employment with the Orange County Department of Probation (ECF 7, at 6, 13), this Court lacks the authority to grant such relief, *see Henry v. Sharp*, No. 4:18-CV-0413 (MGL) (TER), 2018 WL 1413228, at *2 n.2

under the doctrine of judicial immunity;[8] consequently, because Plaintiff seeks monetary relief from a defendant who is immune from such relief, *see* § 1915(e)(2)(B)(iii), such claims are frivolous, *see* § 1915(e)(2)(B)(i); *Mills*, 645 F.3d at 177.

### C.     Claims under Section 1983 against Officer Elison

To the extent that Plaintiff asserts claims under Section 1983 against Officer Elison, Officer Clark's supervisor, the Court must also dismiss those claims. To state a claim under Section 1983, a plaintiff must allege facts showing each defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges nothing to suggest that Officer Elison has been directly and personally involved in any of the alleged violations of Plaintiff's federal constitutional rights; Plaintiff

---

(D.S.C. Feb. 20, 2018) ("Plaintiff also seeks relief which can never be granted, by requesting Defendants be fired. This court cannot 'fire' Defendants."), *report & recommendation adopted*, 2018 WL 1393675 (D.S.C. Mar. 20, 2018).

[8] *See supra* note 5.

13

merely alleges that Officer Elison "has allowed [Officer Clark] to move in such a way as if laws and due process is nonexistent in Orange County's little unethical world." (ECF 7, at 18.) In light of Plaintiff's failure to allege any facts showing Officer Elison's direct and personal involvement in the alleged violations of Plaintiff's federal constitutional rights, and because the Court has determined, as discussed above, that Officer Clark is immune from suit for her alleged acts and failures to act, *see supra* at 9-13, the Court dismisses Plaintiff's claims against Officer Elison under Section 1983 for failure to state claims upon which relief may be granted.[9] *See* § 1915(e)(2)(ii).

**D.     Claims under Section 1983 against Mr. Maier, Ms. Robustello, and Mr. Davis**

The Court must dismiss Plaintiff's claims under Section 1983 against Mr. Maier, Ms. Robustello, and Mr. Davis. A claim for relief under Section 1983 must allege facts showing that the defendants acted under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs.*, Inc., 963 F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires *both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a person who may fairly be said to be a state actor." (internal quotation marks and citation omitted)). Private individuals and other private entities are not generally considered to be state actors. *Sykes v. Bank of Am.*, 723 F.3d

---

[9] Inasmuch as Plaintiff also seeks the termination of Elison's employment with the Orange County Department of Probation (ECF 7, at 6, 13), this Court lacks the authority to order Elison's termination for the same reason it lacks the authority to order Clark's termination, *see supra* note 7.

399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties. . . ." (internal quotation marks and citations omitted)). Absent special circumstances suggesting concerted action between an attorney and a state representative, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970), a private attorney's or a private legal aid organization's legal representation does not constitute state action for the purpose of stating a claim under Section 1983 against that attorney or organization, regardless of whether that attorney or organization is privately retained, court-appointed, or a public defender, *see Bourdon v. Loughren*, 386 F.3d 88, 90 (2d Cir. 2004) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 318-19 (1981); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)); *see also Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000); *Shorter v. Rice*, No. 12-CV-0111 (JFB) (ETB), 2012 WL 1340088, at *4 (E.D.N.Y. Apr. 10, 2012) ("[I]t is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position.").

Plaintiff has alleged no facts showing how Mr. Maier, Ms. Robustello, and Mr. Davis—a private attorney and two Legal Aid attorneys—functioned as state actors when they allegedly violated Plaintiff's federally protected rights. The Court therefore dismisses Plaintiff's claims against these defendants under Section 1983 for failure to state a claim upon which relief may be granted. *See* § 1915(e)(2)(B)(ii).

E.     **Claims of conspiracy under Section 1983**

The Court understands Plaintiff's amended complaint as asserting claims of conspiracy under Section 1983. To state a claim of conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity;

15

(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Vague and unsupported assertions of a claim of conspiracy under Section 1983 will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Plaintiff's allegations regarding a conspiracy are conclusory, vague, and without detail. The Court therefore dismisses Plaintiff's claims of conspiracy under Section 1983 for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**F.    Claims under state law**

The Court understands Plaintiff's claims under state law as brought under the court's supplemental jurisdiction. A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of any of Plaintiff's state law claims. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**G.   Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Because the defects in Plaintiff's amended complaint cannot be cured with another amendment, the Court declines to grant Plaintiff leave to amend his complaint again.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order.

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

SO ORDERED.

Dated:   October 15, 2025
         New York, New York

                                            /s/ Laura Taylor Swain
                                              LAURA TAYLOR SWAIN
                                          Chief United States District Judge